Gregory WARREN, Plaintiff,

v.

A.D.A. Robert FISCHL, A.D.A. Carolyn M. Genovesi, A.D.A. David P. Sullivan, D.A. Denis Dillon, District Attorney's Office of Nassau County, Darin Poole C.I. No. 71–91, Det. Laurette Kemp Sh. No. 737, Det. Anthony Sorrentino Sh. No. 728, Det. George Ludwig Sh. No. 701, Det. Sgt Hinchman Sh. No. Unknown, Nassau County Police Department, in the County of Nassau, Meryl Berkowitz, Matthew Muraskin, Legal Aid Society of Nassau County, in the County of Nassau, Thomas Gullotta, Nassau County, Defendants.

No. 96 CV 3387 ADS.

United States District Court, E.D. New York.

Jan. 9, 1999.

Gregory Warren, Alden, New York, plaintiff pro se.

Owen B. Walsh, Nassau County Attorney by Frank M. Scalera, Mineola, NY, for A.D.A. Robert Fischl, A.D.A. Carolyn Genovesi, A.D.A. David P. Sullivan, D.A. Denis Dillon, District Attorney's Office of Nassau County, Det. Laurette Kemp, Det. Anthony Sorrentino, Det. George Ludwig, Det. Sgt. Hinchman, Nassau County Police Department, in the County of Nassau, Thomas Gullotta, and Nassau County.

Garbarini & Scher, P.C. by Leonard Weinstock, New York City, for Legal Aid Society of Nassau County, in the County of Nassau, Matthew Muraskin, and Meryl Berkowitz.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff *pro se,* Gregory Warren (the "plaintiff" or of "Warren"), instituted the present action pursuant to 42 U.S.C. § 1983 ("Section 1983"). The basis of the plaintiff's complaint is that his criminal prosecution and/or conviction, in County Court, Nassau County, for various drug-related crimes, was predicated on a conspiracy between the defendants that resulted in the admission, at trial, of "false and perjurious testimony." Presently before the Court is the motion by the defendants, the Legal Aid Society of Nassau County, in the County of Nassau (the "Legal Aid Society"), Matthew Muraskin ("Muraskin"), and Meryl Berkowitz's ("Berkowitz") (collectively, the "Legal Aid Defendants") to dismiss the Second Amended

Complaint pursuant to Rules 12(b)(6) and (c) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

## I. BACKGROUND

This action was initially commenced by the plaintiff *pro se* by the filing of a complaint on July 9, 1996. By a letter filed with the Court on August 6, 1996, the plaintiff requested that only certain portions of the complaint be served on the defendants. By a letter dated August 5, 1996, the plaintiff was directed to advise the Court as to whether he would: (1) like to discontinue the action and seal the case file; or (2) have the complaint in its present form, including the attachments, served on the defendants. By a letter dated September 4, 1996, the plaintiff expressed a desire to amend the complaint and to seal the original complaint. By an Order dated September 11, 1996, the original complaint and all exhibits annexed were sealed, and the plaintiff was granted leave to file an amended complaint.

Subsequently, on September 16, 1996, the plaintiff filed an Amended Complaint. The Amended Complaint alleged that the defendants did "knowingly and willfully," or should have known, that they were eliciting and encouraging false and perjurious testimony from witnesses, misrepresenting the evidence, and using or providing false evidence against the plaintiff at his criminal trial. The plaintiff further alleges that the defendants did not attempt to prevent, or that they conspired to commit these violations of his constitutional rights. The plaintiff's Amended Complaint listed the following defendants:

(1) Assistant District Attorney Robert Fischl ("Fischl"), who allegedly was the prosecutor at his trial;

(2) Assistant District Attorney Carolyn M. Genovesi ("Genovesi"), who allegedly participated in an inspection of a search warrant;

(3) Darin Poole ("Poole"), Confidential Informant No. 71–91, who allegedly perjuriously testified before the grand jury and at the plaintiff's trial that: (a) he had discussed and consummated a drug transaction with the plaintiff; (b) the conversations were recorded; (c) the defendant,

Detective Laurette Kemp ("Kemp") Shield No. 737, was present at all four of the drug deals and conversations; and (d) the audio tapes had not been changed or altered in any manner;

(4) Detective Laurette Kemp, Narcotics Bureau, Nassau County Police Department, who allegedly "falsely and perjuriously" testified before the grand jury and at the plaintiff's trial, and whose testimony allegedly supported Poole's testimony;

(5) Detective Anthony Sorrentino, Shield No. 728, Narcotics Bureau, Nassau County Police Department, who allegedly "falsely and perjuriously" testified that: (a) the defendant, Detective George Ludwig ("Ludwig"), and he had monitored the four alleged drug deals; (b) they had obtained a search warrant for the premises where the alleged drug transactions occurred; and (c) they had found certain objects on the premises pursuant to the search;

(6) Detective George Ludwig, Narcotics Bureau, Nassau County Police Department, who allegedly "falsely and perjuriously" testified: (a) at the plaintiff's trial, that he had found pursuant to a search warrant, a nine-millimeter gun, as well as other items, had monitored the four alleged drug deals, and had reviewed all the evidence prior to the trial; and (b) at the Mapp hearing, that he had monitored the four alleged drug deals;

(7) Detective Sergeant Hinchman, Shield No. Unknown, Narcotics Bureau, Nassau County Police Department, who allegedly was the commanding officer and supervisor of Poole, Kemp, Sorrentino, and Ludwig. As such, he allegedly knew or should have known that these four defendants were conspiring to violate the plaintiff's constitutional rights. Hinchman was allegedly obligated to stop these defendants but rather condoned and concealed these acts and/or failed to properly supervise them;

(8) Honorable Judge Zelda Jonas ("Judge Jonas"), who allegedly permitted the inspection of a search warrant. The plaintiff claims that Judge Jonas must or should have known that a search warrant did not exist or that it was forged;

(9) Assistant District Attorney David P. Sullivan, a prosecutor at the plaintiff's trial, who allegedly "knowingly and willfully" elicited and encouraged false and perjurious testimony, "used forged and fabricated evidence (audio tapes and search warrant)," and "did not attempt to stop said violation of Plaintiff's rights";

(10) Honorable Paul Kowtna ("Judge Kowtna"), Nassau County Court Judge, who allegedly presided over the plaintiff's criminal trial. The plaintiff alleges that Judge Kowtna: (a) knew or should have known that no search warrant existed; (b) permitted the prosecutor to elicit perjurious witness testimony; and (c) concealed exculpatory evidence; .

(11) Meryl Berkowitz ("Berkowitz"), an attorney with the Legal Aid Society, who allegedly represented the plaintiff at his criminal trial. She allegedly: (a) "knowingly and willfully" permitted the "prosecution to doctor, alter, and change tapes"; (b) "knowingly and willfully" informed a witness that he could not testify at the plaintiff's trial and destroyed evidence; (c) "knowingly and willfully" waived the plaintiff's rights without the plaintiff's knowledge or consent; (d) knew or should have known that the prosecution was using forged documents; (e) "knowingly and willfully" permitted prosecution witnesses to testify falsely and perjuriously; and (f) "knowingly and willfully" incriminated the plaintiff at his trial;

(12) Denis Dillon ("Dillon"), District Attorney of Nassau County, who is allegedly responsible for any and all actions taken by any Assistant District Attorney. Dillon allegedly knew or should have known that Fischl, Genovesi, and Sullivan were conspiring to violate the plaintiff's rights. He allegedly condoned and concealed the actions of these defendants and/or failed to properly supervise and prevent these violations;

(13) Matthew Muraskin ("Muraskin"), the "Attorney in charge" of the Legal Aid Society, who allegedly knew or should have known that Berkowitz was conspiring to violate the plaintiff's rights and was obligated to stop him. Rather, Muraskin allegedly condoned and concealed his actions and/or failed to properly supervise him;

(14) Nassau County Police Department, which is allegedly liable for the actions or misfeasance of its employees;

(15) Legal Aid Society, which is allegedly liable for the actions, conduct, and misfeasance of its employees;

(16) District Attorney's Office of Nassau County (the "District Attorney's Office"), which is allegedly liable for the actions, conduct, and misfeasance of its employees;

(17) Nassau County Courts, which is allegedly liable for the actions, conduct, and misfeasance of its employees, namely, Judge Jonas and Judge Kowtna;

(18) Thomas Gullotta, Nassau County Executive Administrator, who is allegedly liable for the actions of the District Attorney's Office of Nassau County, the Nassau County Police Department, the Nassau County Courts, and the Legal Aid Society; and

(19) Nassau County, which allegedly employed all of the defendants and is therefore, responsible for the actions, conduct, and misfeasance of its employees.

As a result, the plaintiff alleged that his Fourth, Fifth, Sixth, and Fourteenth Amendment rights were violated.

On March 25, 1998, the Court granted the motion to dismiss the Amended Complaint as to the defendants, Hon. Judge Zelda Jonas, Hon. Judge Paul Kowtna, and the Nassau County Courts. In addition, the Court granted the Legal Aid Defendants' motion to dismiss the Amended Complaint as to the non-conspiracy section 1983 claim. The Court, however denied, without prejudice, the Legal Aid Defendants' motion to dismiss the section 1983 conspiracy claim and granted the plaintiff's motion to amend his Amended Complaint in order to replead his section 1983 conspiracy allegations as they relate to the Legal Aid Defendants. The Court Ordered that the plaintiff file his Second Amended Complaint within 45 days of the Order.

More than 45 days later, on May 21, 1998, the plaintiff filed his forty page Second Amended Complaint. In response, the Legal

Aid Defendants renewed their motion to dismiss on the basis of Rules 12(b)(6) and (c) of the Fed.R.Civ.P. In addition, the Legal Aid Defendants submit that the Second Amended Complaint should be dismissed outright as it was served and filed after the 45 days the Court Ordered it to be completed in its March 25, 1998 Order. The Court denies the Legal Aid Defendants' request for dismissal of the Second Amended Complaint on the basis of the plaintiff's apparent delay in his serving and filing of the complaint. The Court notes that the plaintiff's Second Amended Complaint was notarized within the 45 day period and that the plaintiff was, and still is, incarcerated. Further, the Legal Aid Defendants have failed to demonstrate any prejudice that resulted from the short delay by the plaintiff in serving and filing the Second Amended Complaint.

Before analyzing the merits of the Legal Aid Defendants' motion to dismiss the plaintiff's Second Amended Complaint, the Court must review the allegations set forth in the complaint as it pertains to the defendants Meryl Berkowitz, Matthew Muraskin, and the Legal Aid Society of Nassau County.

Paragraph 61 of the plaintiff's Second Amended Complaint contends, in part, that on October 28, 1992, Fischl, Poole, Kemp, Ludwig, and Berkowitz conspired "to present fabricated testimony and perjurious testimony to the Grand Jury." According to the plaintiff, this resulted in his unlawful indictment, prosecution, and conviction. Paragraph 62 asserts, in part, that on September 2, 1993 Berkowitz conspired with the other defendants "to conceal the fact that the NCPD [Nassau County Police Department] did not have a search warrant upon entering plaintiff's premises." Paragraph 63 asserts, in part, that on November 16, 1993, Berkowitz conspired with the other defendants to "prosecute plaintiff on an invalid indictment." Paragraph 64 reiterates many of the allegations contained in the first 63 paragraphs, and adds that Berkowitz conspired with the other defendants by precluding the plaintiff from testifying at trial and not putting forth a favorable defense. Similarly, paragraph 65 contends, in part, that on November 16, 1993, Berkowitz conspired with the other defen-

dants to prevent him from calling witnesses and presenting evidence favorable to his case. Paragraph 66 claims, in part, that on June 20, 1994, Berkowitz conspired with the other defendants by erasing portions of audio tapes for the purpose of preventing the plaintiff from presenting exculpatory evidence at his criminal trial. Paragraph 67 asserts, in part, that on November 16, 1993, Berkowitz conspired with the other defendants to deny him effective assistance of counsel. Paragraph 76 contends, in part, that the plaintiff's rights were violated due to Matthew Muraskin's failure to properly supervise Berkowitz or his actual participation in the conspiracy with the other defendants. Finally, paragraph 82 states, in relevant part, that the Legal Aid Society "failed to honor its obligations and furnish plaintiff with adequate moral and ethically sound legal representation and/or supervision."

## II. DISCUSSION

### A. *Motions to Dismiss*

#### 1. *Standard of review*

##### a. *Self representation*

 In addressing the defendant's motion, the Court is mindful that the plaintiff is proceeding *pro se* and that his submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers.' " *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); *see also McNeil v. United States*, 508 U.S. 106, 113, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993) (asserting "that the pleadings prepared by prisoners who do not have access to counsel be liberally construed"); *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir.1993). The Court recognizes that it must make reasonable allowances so that a *pro se* plaintiff does not forfeit his rights by virtue of her lack of legal training. *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983). However, the Court is also aware that *pro se* status " 'does not exempt a party from compliance with relevant rules of procedural and substantive law.' " *Id.* (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)).

### b. *Rule 12(b)(6) standard*

On a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also IUE AFL—CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir.1993), *cert. denied*, 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). The Second Circuit stated that in deciding a Rule 12(b)(6) motion, a court should consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir.1993); *see also International Audiotext Network, Inc. v. AT & T Co.*, 62 F.3d 69, 72 (2d Cir.1995); *Paulemon v. Tobin*, 30 F.3d 307, 308–09 (2d Cir.1994); *Rent Stabilization Ass'n of the City of New York v. Dinkins*, 5 F.3d 591, 593–94 (2d Cir.1993) (citing *Samuels*, 992 F.2d at 15).

It is not the Court's function to weigh the evidence that might be presented at a trial; the Court must merely determine whether the complaint itself is legally sufficient, *see Goldman*, 754 F.2d at 1067, and in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true, *see Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996); *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991); *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 14 (2d Cir.1989), *cert. denied*, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Leeds*, 85 F.3d at 53; *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1098 (2d Cir.1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice," Fed.R.Civ.P. 8(f).

The issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995), *cert. denied*, 519 U.S. 808, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996) (quoting *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal under Rule 12(b)(6). *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995) (citing *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683).

It is within this framework that the Court addresses motions to dismiss

### 2. *Section 1983 and the Legal Aid Defendants' Motion to Dismiss*

42 U.S.C. § 1983 provides, in relevant part, "[e]very person who, under color of [state law] subjects, or causes to be subjected, any ... person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law [or a] suit [in] equity." A violation is proven when "a person acting under color of state law deprived a plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *McDarby v. Dinkins*, 907 F.2d 1334, 1336 (2d Cir.1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 [1981]). Thus, a Section 1983 claim has two elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of his rights or privileges secured by the Constitution and laws. *See Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir.1998); *Eagleston v. Guido*, 41 F.3d 865, 872 (2d Cir.1994).

In order to satisfy the first requirement of acting under color of state law, the Second Circuit has required that the defendant exer-

cise power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir.1996) (quoting *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 [1988] ).

The second requirement, that the plaintiff suffer a deprivation of his rights or privileges secured by the Constitution, requires that the plaintiff specifically allege a violation of the Constitution or an Act of Congress. The United States Supreme Court has held:

> Standing alone, § 1983 clearly provides no protection for civil rights since, as we have just concluded, § 1983 does not provide any substantive rights at all. To be sure, it may be argued that § 1983 does in some sense provide for the protection of civil rights when it authorizes a cause of action based on the deprivation of civil rights guaranteed by other Acts of Congress.

*Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 618, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979).

■ The Second Circuit has held that a court-appointed attorney is not a state actor when performing the general role of defending a criminal defendant. *See Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir.1997). In *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981), the Supreme Court held that a "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Thus, without special circumstances, the plaintiff's claim under section 1983 against the Legal Aid Society, Muraskin, and Berkowitz must be dismissed. However, a public defender may be held liable under section 1983 if he or she engages in a conspiracy with officials acting under the color of state law to deprive a person of a right secured by the Constitution. *Tower v. Glover*, 467 U.S. 914, 923, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984); *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir.1995), *cert. denied*, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996). Hence, if the plaintiff's allegations of conspiracy against the Legal Aid Society, Muraskin, or Berkowitz are sufficient, then he may be able to state a viable cause of action against them under section 1983.

■ *Pro se* complaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights are subject to dismissal. *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993); *Zemsky v. City of New York*, 821 F.2d 148, 151 (2d Cir.1987), *cert. denied*, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987); *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977). "Diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ostrer*, 567 F.2d at 553. "[W]hile a plaintiff should not plead mere evidence, he should make an effort to provide some 'details of time and place and the alleged effects of the conspiracy.'" *Dwares*, 985 F.2d at 100 (quoting 2A Moore's Federal Practice ¶ 8.17[6], at 8–109 (2d ed.1992)). In addition, a plaintiff must plead facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end. *Augustine v. Reid*, 882 F.Supp. 50, 53 (E.D.N.Y.), *aff'd*, 99 F.3d 402 (1995). Under the standard enunciated above, the Court finds that the plaintiff's allegations of conspiracy between the Legal Aid Society, Muraskin, and Berkowitz and the other defendants remaining in the Second Amended Complaint are conclusory and vague and fail to plead facts which demonstrate that the private actors entered into agreements, explicit or tacit, with governmental actors.

The plaintiff alleges that Berkowitz, under the supervision of Muraskin and the Legal Aid Society, engaged in numerous conspiracies with the other defendants including: 1) altering tapes that contained exculpatory evidence; 2) permitting the prosecution to admit perjurious testimony at trial; 3) not permitting the plaintiff to testify at trial; 4) not presenting a rigorous defense at trial; 5) permitting an indictment to occur based on perjurious testimony; and 6) permitting an illegal search warrant to be executed.

Viewing these allegations in the light most favorable to the plaintiff, the Court finds that the plaintiff has not alleged a conspiracy

involving Berkowitz and the other named defendants. The plaintiff does not plead sufficient facts to demonstrate that Berkowitz entered into an agreement or any other facts to support that a conspiracy was formed. The plaintiff's Second Amended Complaint contains no allegations of fact that support an agreement to conspire. The allegations made by the plaintiff in this regard are purely conclusory. Therefore, the Court finds that the plaintiff has failed to sufficiently allege a conspiracy cause of action between the Legal Aid Defendants and the other named defendants.

### 3. *The Plaintiff's State Law Claim*

On March 25, 1998 the Court, viewing the allegations in the light most favorable to the plaintiff, found that the Amended Complaint also alleged a state law legal malpractice suit against the defendants Berkowitz, Muraskin, and the Legal Aid Society. The Legal Aid Defendants contend that since the federal claim must be dismissed against them, the Court should decline to exercise supplemental jurisdiction over the state law claim. The Court agrees.

The exercise of supplemental jurisdiction by a federal court over a state law claim is governed by 28 U.S.C. § 1367 which provides, in relevant part, that "[t]he district court may decline to exercise supplemental jurisdiction over a claim ... [if] the district court has dismissed all claims over which it has original jurisdiction" (28 U.S.C. § 1367[c][3]). According to the Second Circuit, in a case addressing the discretionary exercise of supplemental jurisdiction, " 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims' " (*Travelers Ins. Co. v. Keeling*, 996 F.2d 1485, 1490 [2d Cir. 1993] [*quoting Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ]; *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 [1966] [discussing pendent jurisdiction]; *Morse v. University of Vermont*, 973 F.2d 122, 127 [2d Cir.1992] [same] ).

While the Court notes that the entire complaint has not been dismissed, in its discretion, the Court declines to exercise jurisdiction over the remaining state-law claims due to the dismissal of the federal claims against these movants, the early stage of this litigation, and the remote possibility that the plaintiff would succeed on the merits of the state claim. In addition, the Court notes that the plaintiff did not specifically plead a state law claim of legal malpractice, and it was the Court, in its March 25, 1998 Order, that gave the plaintiff the benefit of the doubt by reading into the Amended Complaint a possible state law claim of legal malpractice.

### III. CONCLUSION

Having reviewed the parties' submissions, and for the reasons set forth above; it is hereby

**ORDERED,** that the motion to dismiss the complaint by the defendants the Legal Aid Society of Nassau County, Matthew Muraskin and Meryl Berkowitz is **GRANTED;** and it is further

**ORDERED,** that the caption shall now read as follows:

GREGORY WARREN, Plaintiff,

against

A.D.A. ROBERT FISCHL, A.D.A. CAROLYN M. GENOVESI, A.D.A. DAVID P. SULLIVAN, D.A. DENIS DILLON, DISTRICT ATTORNEY'S OFFICE OF NASSAU COUNTY, DARIN POOLE C.I. NO. 71–91, DET. LAURETTE KEMP SH. NO. 737, DET. ANTHONY SORRENTINO SH. NO. 728, DET. GEORGE LUDWIG SH. NO. 701, DET. SGT HINCHMAN SH. NO. UNKNOWN, NASSAU COUNTY POLICE DEPARTMENT, IN THE COUNTY OF NASSAU, THOMAS GULLOTTA, NASSAU COUNTY, Defendants.

**SO ORDERED.**