**Edith PINERO, Plaintiff,**

v.

**LONG ISLAND STATE VETERANS HOME, The State University of New York at Stony Brook, Dr. Shirley Strum Kenny, Edward Moretti, Joseph Lapietra, Bernard Hirsch, Jerry Krause, Virgelene Bowie, Joan Torp–Genco, Defendants.**

No. 03–cv–0985(ADS)(MLO).

United States District Court, E.D. New York.

July 1, 2005.

Law Offices of Peter G. Albert by Peter G. Albert, Esq., Of Counsel, Commack, NY, for the Plaintiff.

Eliot Spitzer, Attorney General of the State of New York by Toni E. Logue, Assistant Attorney General, Mineola, NY, for the defendants Long Island State Veterans Home, the State University of New York at Stony Brook, Dr. Shirley Strum Kenny, Edward Moretti, Joseph Lapietra, Jerry Krause, and Virgelene Bowie.

No Appearance for Defendants Bernard Hirsch and Joan Torp–Genco.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This is a civil action by Edith Pinero ("Pinero" or the "Plaintiff") for damages pursuant to Title VII, the Americans with Disabilities Act, 42 U.S.C. §§ 1981, 1983 and 1985, and the New York State Human Rights and Executive law. The Plaintiff alleges that her former employer the Long Island State Veterans Home ("LISVH"), along with the State University of New York at Stony Brook ("Stony Brook"), Dr. Shirley Strum Kenny, Edward Moretti, Joseph Lapietra, Bernard Hirsch, Jerry Krause, Virgelene Bowie, and Joan Torp–Genco, subjected her to adverse treatment and terminated her because of her age, national origin, disability, and in retaliation for having complained of discrimination.

On January 21, 2005, the defendants LISVH, Stony Brook, Dr. Shirley Strum Kenny, Edward Moretti, Joseph Lapietra, Jerry Krause, and Virgelene Bowie (collectively the "Defendants") filed a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for partial dismissal of the Plaintiff's claims under Title VII, the Americans with Disabilities Act, Section 1983 and 1985, and New York state law. In response, the Plaintiff withdrew all of her claims under the Americans with Disabilities Act and her Section 1983 claims against LISVH, Stony Brook, and the other individual Defendants in their official capacity. The Plaintiff also withdrew her claims under New York State law that alleged discrimination for age, disability, and national origin. The remaining claims in the complaint include: (1) claims under Title VII against LISVH and Stony Brook; (2) claims under Section 1983 against the individual defendants; (3) claims under Section 1981 and 1985 against the individual Defendants; and (3) claims under New York state law for retaliation against LISVH and Stony Brook.

On March 15, 2005, the Defendants filed a reply to the Plaintiff's opposition in which they moved for the first time to dismiss the Plaintiff's Section 1981 claim. "A court may choose to not consider arguments first raised in reply papers in support of a motion." *Mascol v. E & L Transp., Inc.,* No. 03–3343, 2005 WL 1123936, at *12 (E.D.N.Y. May 9, 2005). Arguments that are raised for the first time in a reply brief deprive the opposing party of an opportunity to be heard on the issue, unless the court permits the filing of a sur-reply. *See Cantor Fitzgerald Inc. v.*

*Lutnick,* 313 F.3d 704, 711 n. 3 (2d Cir. 2002). In this case a sur-reply was neither filed nor permitted. Accordingly, this Court declines to consider any arguments of the Defendants raised for the first time in a reply brief.

## I. BACKGROUND

The following factual allegations are taken from the complaint and any documents attached to or incorporated by reference in the complaint. The Plaintiff is a 67 year old Hispanic women of Puerto Rican origin who has been employed as a nurse since 1974. In January 1997, Pinero commenced employment as an Assistant Director of Nursing at the defendant LISVH, a municipal corporation existing under the laws of the state of New York. LISVH is a skilled nursing facility that provides healthcare and other medical services to veterans of the United States armed forces. The complaint alleges that LISVH is a division of the State University of New York at Stony Brook.

Between February 1997 and February 1999, Pinero received favorable employment evaluations. On or about May 26, 1999, Pinero fractured her ankle while working at LISVH. The injury caused her to be absent from work from June 10, 1999 to November 11, 1999. When Pinero returned to work she alleges that she was subjected to harassment and disparate treatment by Virgelene Bowie ("Bowie"), the Director of Nursing at LISVH and Pinero's supervisor. The harassment consisted of negative and unflattering verbal statements regarding Pinero's ability to continue working. On March 1, 2000, Pinero received a written "unsatisfactory" employment evaluation from Bowie.

On March 3, 2000, Edward Moretti, the Director of Human Resources at Stony Brook, advised Pinero in writing that her employment contract would not be re-newed effective March 15, 2001. This determination was allegedly based upon the unsatisfactory rating Pinero received two days earlier. Pinero alleges that the decision not to renew her contract was made collectively by Dr. Shirley Strum Kenny, the President of Stony Brook University("Dr. Kenny"); Joseph Lapietra, the Deputy Administrator of LISVH ("LaPietra"); Bernard Hirsch, the Executive Director of LISHV ("Hirsch"); Jerry Krause, the Administrator of LISVH ("Krause"); Bowie; and Joan Torp–Genco, the Deputy Director of Nursing at LISVH ("Torp–Genco"). Pinero's basis this allegation on a letter dated March 1, 2001, from the Associate Counsel of Stony Brook University to the New York State Division of Human Rights, which states that the individuals involved in making the determination to terminate the Plaintiff were Bowie, Torp–Genco, Krause, LaPietra, Hirsch, and Dr. Kenny.

On or about March 3, 2000, Pinero filed an internal complaint with Stony Brook's Office of Diversity and Affirmative Action. On June 30, 2000, her complaint to Stony Brook's Office of Diversity and Affirmative Action was dismissed as unsubstantiated.

On March 7, 2000, Pinero requested a review of her unsatisfactory rating by Stony Brook's Health Sciences Professional Review Committee (the "Committee"). On June 12, 2000, the Committee concluded that the unsatisfactory rating was unwarranted due to the fact that Pinero had no previous letters of counseling or any indication of unsatisfactory performance. The Committee concluded its review by recommending that Pinero be reevaluated in six months. On August 28, 2000, the Committee's recommendation was accepted by Dr. Kenny and she directed Bowie and LISVH to reevaluate Pinero in six months.

Pinero claims that between March 2000 and March 2001 she was subject to additional harassment and disparate treatment by Bowie and Torp–Genco. Specifically, she alleges that she was required to complete incident reports in a different manner than other nursing supervisors; denied admission to seminars; denied participation on the recruitment and dietary committee; and received harsher scrutiny by her supervisor Bowie. Further, Pinero claims that she was never reevaluated despite the Committee's recommendation and the directive issued by Kenny following her unsatisfactory rating. On March 15, 2001, Pinero was terminated from employment with LISVH.

On May 16, 2000, Pinero filed an administrative complaint with the State Division of Human Rights alleging unlawful employment discrimination on the basis of age, disability and national origin. This complaint was deemed to be jointly filed with the Equal Employment Opportunity Commission (the "EEOC"). On November 29, 2002, the EEOC issued a "Dismissal and Notice of Rights." This civil action was commenced on February 27, 2003.

## II. DISCUSSION

### A. Standard of Review

In ruling on a motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept as true all the factual allegations and construe the complaint liberally. *Velez v. Levy*, 401 F.3d 75, 80 (2d Cir.2005); *Scutti Enterprises v. Park Place Entertainment Corp.*, 322 F.3d 211, 214 (2d Cir.2003); *Bolt Elec. v. City of New York*, 53 F.3d 465, 469 (2d Cir.1995). The court must also draw all reasonable inferences in the plaintiff's favor, but need not accept "mere conclusions of law or unwarranted deductions." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.

1994). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir.2000). In deciding a Rule 12(b)(6) motion a court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken. . . ." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

### B. Title VII Claims

#### 1. As to the Defendant Stony Brook

A statutory prerequisite to commencing an action in federal court under Title VII is the filing of an administrative complaint with the EEOC or an authorized state agency that names the particular defendant. 42 U.S.C. § 2000e–5(e). This statutory prerequisite applies regardless of whether the two defendants are considered a "single employer." *See Perez v. Int'l Bhd. of Teamsters*, No. 00–1983, 2002 WL 31027580, at *5, 2002 U.S. Dist. LEXIS 16985, at *16 (S.D.N.Y.2002); *cf. Toriola v. N.Y. City Transit Auth.*, 95 Fair Empl. Prac. Cas. (BNA) 1096 (S.D.N.Y.2005) (discussing the single employer test). Here, the Defendant Stony Brook argues that the Title VII claim must be dismissed against it because the Plaintiff's administrative complaint only named the Defendant LISVH.

■ However, under the "identity of interests" doctrine a defendant who is not

named in an EEOC charge may nevertheless be a defendant in a subsequent civil action. *Johnson v. Palma*, 931 F.2d 203 (2d Cir.1991); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir.1999). The "identity of interests" doctrine provides that under certain circumstances, an employment discrimination action may "proceed against an unnamed party where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." *Id.* at 209.

The purpose of the administrative complaint is "to notify the charged party of the alleged violation and also brings the party before the EEOC, making possible effectuation of the Act's primary goal of securing voluntary compliance with its mandates." *Vital*, 168 F.3d at 619 (quoting *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905 (7th Cir.1981)). The "identity of interest" exception was developed because charges of employment discrimination are generally "filed by parties not versed in the vagaries of Title VII and its jurisdictional and pleading requirements...." *Vital*, 168 F.3d at 619. Thus, a plaintiff who files an administrative complaint but fails to name a defendant may maintain an action in federal court under certain circumstances.

■ Factors that the Second Circuit has identified as useful in determining whether there is an "identity of interests" include: 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Johnson*, 931 F.2d at 209–10 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.1977)).

■ Applying these factors to the facts alleged in this case, it is clear that the Plaintiff can sustain a civil action under Title VII against the Defendant Stony Brook, even though it was not expressly named in the administrative complaint filed by the Plaintiff. The March 1, 2001 letter from the Associate Counsel of Stony Brook to the New York State Division of Human Rights, which is referenced in the complaint, was sent by Stony Brook in response to the Plaintiff's administrative complaint. In that letter Stony Brook admits that Dr. Kenny, the President of Stony Brook, took part in the decision not to renew the Plaintiff's employment contract. Plainly, by responding to the administrative complaint Stony Brook had notice of the Plaintiff's claim and participated in the administrative complaint process. In addition, Stony Brook's response in the letter indicates that they were involved in the employment decision not to renew the Plaintiff's contract. Under these circumstances, the Plaintiff's failure to name Stony Brook in the administrative complaint is excusable under the "identity of interests doctrine." Accordingly, the motion to dismiss Stony Brook based on the Plaintiff's failure to name it in the administrative complaint is denied.

**2. As to Claims Based on Retaliation**

■ The Defendants argue that the Plaintiff's second cause of action for retali-

ation under Title VII should be dismissed because she was notified that her contract would not be renewed before any internal or administrative complaint was filed. "In order to 'establish a prima facie case of retaliation, an employee must show [1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action.'" *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir.2004) (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.1998) and *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995)). Here, the complaint plainly alleges the first element, namely, that the Plaintiff participated in a protected activity by filing an administrative complaint. Thus, the Court will look at whether the allegations in the complaint set forth the second and third elements for retaliation.

The Second Circuit has established that the test for the second element, "an adverse employment action," is whether there has been a "materially adverse change in the terms, privileges, duration and conditions of employment." *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir.2002). This may "include[ ] discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Morris v. Lindau*, 196 F.3d 102, 110 (2nd Cir.1999); *Frasure v. Principi*, 367 F.Supp.2d 245 (D.Conn.2005). The third element, "a causal connection between the protected activity and the adverse employment action" can be established either indirectly by showing that the protected activity was followed by discriminatory treatment or directly through evidence of retaliatory animus. *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993).

The complaint alleges several instances of discriminatory actions that occurred after the Plaintiff filed her administrative complaint that could be construed as a causal link between the complaint of discrimination and her ultimate termination. However, the problem with the Plaintiff's retaliation claim is that she was informed that her contract would not be renewed prior to the filing of any administrative complaint. There can be no inference of retaliatory animus where the adverse employment action occurred prior to the protected activity. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir.2001). Thus, as a matter of law, the Plaintiff cannot sustain an action for retaliation.

The Plaintiff's argument that the Defendant's failure to reevaluate her was an adverse employment action has no merit. An adverse employment action requires a "materially adverse change in the terms, privileges, duration and conditions of employment." *Treglia*, 313 F.3d at 720. The failure to reevaluate the Plaintiff was not a "materially adverse change," rather it was an action that kept the status quo in place. Further, the failure to reevaluate and the other actions that the Plaintiff claims were "materially adverse," such as having to complete incident reports differently and being denied admission to committees, were a consequence of the fact that she was being terminated at the end of the year. There can be no inference of retaliation where the protected activity occurred after the adverse employment action. As such, based upon the facts alleged in the complaint the Plaintiff's retaliation claims in her second, fifth, and sixth causes of action must be dismissed.

In addition, as the New York state-law claims for retaliation are evaluated under the same substantive law, *see Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n. 1

(2d Cir.2000), the Plaintiff's state law claims for retaliation are also dismissed. Accordingly, since the Plaintiff has withdrawn all of her other claims under New York state law, no state law causes of action remain in the complaint.

## C. As to the Section 1983 Claims

■■■■ The Defendant contends that the section 1983 claim brought against Moretti, Krause, and LaPietra should be dismissed because the complaint does not contain a single allegation connecting them to the complained of events. Rule 8 of the Federal Rules of Civil Procedure only requires "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed.R.Civ.P. 8(a). In order to plead a prima facie case under section 1983, the Plaintiff must allege personal involvement on the part of each individual defendant. *See Feingold*, 366 F.3d at 159. A fair reading of the complaint reveals that the Plaintiff has met this minimal burden with regard to Krause and LaPietra. The complaint alleges that Krause and LaPietra were personally involved in making the decision not to renew Pinero's contract. These allegations are sufficient to allege a connection between the termination and the two individual defendants.

The complaint is less specific as to Moretti, but nevertheless sufficient to state a claim under Section 1983. The complaint states that Moretti was the individual that signed the letter that informed Pinero that she would not be reinstated. The complaint also generally alleges that Moretti was personally involved in the decision to terminate the Plaintiff. As such, the Court finds that these allegations are sufficient under Rule 8 to allege Moretti's personal involvement in the complained of conduct. The motion to dismiss the Section 1983 claim against these individuals is denied.

## D. As to the Section 1985 Claim

■■■■ The Plaintiff's sixth cause of action alleges that the individual defendants conspired to discriminate against her. "In order to maintain an action under Section 1985, a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir.2003) (quoting *Romer v. Morgenthau*, 119 F.Supp.2d 346, 363 (S.D.N.Y.2000)). The Second Circuit has repeatedly held that a "complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir.1999); *accord Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.1983).

Here, the plaintiff has not alleged, except in the most conclusory fashion, that there was a "meeting of the minds" among any of the Defendants. As such, the conspiracy allegation in the Plaintiff's sixth cause of action must be dismissed for failure to state a claim. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir.1997) (affirming the dismissal of "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights").

## III. CONCLUSION

For all the above reasons, the Defendants' partial motion to dismiss under Rule 12(b)(6) is granted in part and denied as follows: it is hereby

**ORDERED,** that the Defendants' motion to dismiss Stony Brook under Rule 12(b)(6) is **DENIED;** and it is further

**ORDERED,** that the Defendants' motion to dismiss all federal and state-law

retaliation claims in the complaint is **GRANTED,** and it is further

**ORDERED,** that the Defendants' motion to dismiss the Plaintiff's Section 1983 claim against Defendants Moretti, Krause, and LaPietra is **DENIED;** and it is further

**ORDERED,** that the Defendants' motion to dismiss the Plaintiff's Section 1985 claim is **GRANTED;** and it is further

**ORDERED,** that the parties are directed to contact United States Magistrate Judge Michael L. Orenstein forthwith to schedule the completion of discovery.

**SO ORDERED.**